Carol **STAROBA**, Individually and as surviving wife of Arlyn Staroba, deceased, Plaintiff and Appellant,

v.

Richard Paul **HEITKAMP**, Jerome Heitkamp, Joan Heitkamp, Don Heitkamp, Larry Heitkamp, and Jerry Heitkamp, Defendants and Appellees.

Civ. No. 10414.

Supreme Court of North Dakota.

Oct. 3, 1983.

---

* Retired Justice Wm. L. PAULSON served as a Surrogate Judge for this case pursuant to § 27–17–03, NDCC.

Wegner, Fraase, Nordeng & Johnson, Fargo, for plaintiff and appellant; argued by Mervin D. Nordeng, Fargo.

Cahill Law Office, Moorhead, Minn., for Jerome and Joan Heitkamp; argued by Steven L. Marquart, Moorhead, Minn.

Gunhus, Grinnell, Jeffries, Klinger, Vinje & Swenson, Moorhead, Minn., for Richard Heitkamp; no appearance.

Tenneson, Serkland, Lundberg, Erickson & Marcil, Fargo, for Don, Larry, and Jerry Heitkamp; no appearance.

ERICKSTAD, Chief Justice.

The only issue on appeal in this case is whether or not, as a matter of law, defendant Jerome Heitkamp is liable under the Family Car Doctrine for the negligent operation of a vehicle by his son, Richard. The plaintiff, Carol Staroba, brought this action against the defendants seeking damages for the wrongful death of her husband when the car he was driving collided with a 1973 Chevrolet pickup driven by defendant, Richard Heitkamp, on January 1, 1981. A jury trial was commenced during September, 1982, on the issue of liability only. The jury, by special verdict, found that as a cause of the accident Richard was 95% neg-ligent and the plaintiff's deceased husband, Arlyn Staroba, was 5% negligent. Neither party has filed an appeal from that part of the judgment based upon that determination.

The jury also found that the pickup driven by Richard was not a family car within the purview of the Family Car Doctrine upon which to predicate liability against Jerome for Richard's negligence. Carol moved the court for judgment notwithstanding the verdict on the issue of the Family Car Doctrine and also moved the court for a new trial as to that issue. On February 22, 1983, the district court entered an order denying Carol's motions. On that same date, the court entered an amended final judgment of liability in accordance with the jury's special verdict with a Rule 54(b), N.D.R.Civ.P., direction that no reason existed for delay in entering final judgment, subject to appeal, on the issue of liability.

Carol has filed an appeal from the court's order denying her motion for judgment notwithstanding the verdict or for a new trial and from the amended judgment only with regard to the denial of liability against Jerome under the Family Car Doctrine. We hold that, as a matter of law, Jerome Heitkamp is liable in this case under the Family Car Doctrine and, in that regard, we reverse the order and amended judgment, dated February 22, 1983, and remand with directions for the district court to enter judgment in accordance with this opinion.

Liability based upon the Family Car Doctrine was adopted by this Court in the case of *Ulman v. Lindeman,* 44 N.D. 36, 176 N.W. 25 (1919). The doctrine is based upon an extension of the *respondeat superior* rule of liability in cases involving master and servant or principal and agent. Simply stated, the Family Car Doctrine is that the owner of a vehicle is liable for its negligent operation by one who is using the vehicle with the express or implied consent of the owner for purposes of the business or pleasure of the owner's family. *I.e. Lauritsen v. Lammers,* 161 N.W.2d 804 (N.D.1968). The doctrine was created in furtherance of the

public policy of giving an injured party a cause of action against a financially responsible defendant. *Michaelsohn v. Smith,* 113 N.W.2d 571 (N.D.1962). The facts relevant to this issue are generally undisputed.

At the time of the accident, Richard was 18 years old and was living at the home of his parents, Jerome and Joan Heitkamp, on a farm near Mooreton, North Dakota.

When the accident occurred, Richard was driving a 1973 Chevrolet pickup between locations where he was checking his animal traps. The pickup was purchased by Jerome for use on the farm, and the title was placed in his name alone. The pickup was insured by Jerome in his own name, and it was depreciated by him on his income tax filings. Following the accident, Jerome filed an insurance claim for property damage to the pickup, and he received the insurance check in his name which he placed in the bank. However, Jerome informed Richard that the money was his to use for the purchase of another vehicle. The insurance proceeds were reported by Jerome as a capital gain.

In anticipation of Jerome's retirement from farming, a partnership was formed in 1977 among Jerome's sons: Richard, Larry, Jerry, and Don. Under the agreement, the partners engaged in the business of farming land owned by Jerome and additional property which they acquired or leased. Shortly after the partnership was formed, Jerome sold some of his farmland to the boys. The farmland which he kept was also farmed by the partnership for which he was compensated on a one-third sharecrop basis. Although not a part of the partnership or sharecrop agreement, it is undisputed that Jerome agreed to provide his sons with the use of his farm machinery as well as certain trucks and pickups, including the 1973 Chevrolet pickup, which were to be used by the partnership. However, Jerome received no money from the partnership for machinery or motor vehicles and no record was made of any transfer of machinery or motor vehicles by Jerome to the partnership.

Jerome continued to use the 1973 pickup for a period of time after the partnership was created. However, Richard increasingly used the pickup for such things as traveling to and from school, hunting and trapping, and social purposes. Eventually, Richard was using the 1973 pickup so much that it was seldom available for Jerome, and he then purchased a 1978 pickup for his use.

Although the 1973 pickup was used almost exclusively by Richard for nonpartnership travel such as social purposes or hunting and trapping, there was an understanding between Jerome and his sons that Richard's use of the 1973 pickup was subject to the partnership's need for its use. Although Richard was allowed to use the pickup, without asking, for "normal" routine such as checking his traps, Jerome did place limitations on Richard's use of the pickup as is indicated by Jerome's testimony:

"Q. (Mr. Nordeng continuing) Did he [Richard] understand or know that he could use it when he wanted to?

"A. In certain conditions he always asked. If he didn't—if he wanted something, he'd ask. If he wanted to go someplace else or something, yes, then he asked.

"Q. You're saying if he wanted to go out or something?

"A. Away from something that would be actually normal in the routine of life, yes, then he would ask.

"Q. Now if he were going to check his traps, would that be in the routine?

"A. I would say that would be normal as anybody could be.

\* \* \* \* \* \*

"Q. Now at other times were there limitations on it?

"A. Well, if there was someplace that he wanted to go that I didn't want him to go, yes.

"Q. I see. You mean as far as going to town or whatever?

"A. Or goin' to someplace where there was something going on that I didn't think he belonged, why then that's right.

"Q. Did you, then, on some occasions tell him, 'No, you cannot use it'?

"A. That's right."

A motion for judgment notwithstanding the verdict should not be granted unless the moving party is entitled to judgment on the merits as a matter of law. *South v. National Railroad Passenger Corporation,* 290 N.W.2d 819 (N.D.1980). The motion must be denied unless the court finds that the evidence, viewed most favorably to the party against whom the motion is made, compels but one conclusion as to the verdict with which no reasonable man could differ. *Staiger v. Gaarder,* 258 N.W.2d 641 (N.D. 1977). Having reviewed the record in this case, we conclude that, as a matter of law, the 1973 pickup driven by Richard at the time of the accident was a family vehicle for purposes of applying the Family Car Doctrine by which Jerome is liable for Richard's negligent operation of the vehicle at the time of the accident. We conclude that the following undisputed facts require application of the Family Car Doctrine with respect to Jerome's liability in this case:

(1) Jerome held the legal title to the 1973 Chevrolet pickup in his name.

(2) The pickup was purchased with Jerome's funds.

(3) Jerome placed the pickup on his own depreciation schedule for income tax purposes.

(4) Jerome insured the pickup under his own insurance policy and collected the insurance proceeds when the pickup was damaged in the accident which he reported as a capital gain on his income tax filings.

(6) At the time of the accident, Richard was an unemancipated member of the family who lived with his parents, Jerome and Joan, on their family farm.

(7) At the time of the accident, Richard was using the pickup to travel between traps which he was checking on that day, a purpose for which he was authorized to use the pickup.

(8) Jerome instructed Richard that although the pickup was his to use he must allow priority use of the pickup by the brother's partnership for farming purposes.

(9) Jerome retained control of Richard's use of the pickup.

■ The Heitkamps assert that the jury could have reasonably found the Family Car Doctrine to be inapplicable because Jerome "gave" the 1973 pickup to the partnership or to Richard. We disagree. The undisputed evidence shows that at the time of the accident Jerome not only held legal title to the vehicle but retained other incidents of ownership, previously enumerated, including some degree of control over its use by Richard. In view of those facts, Jerome's intent to give the pickup to the partnership or to Richard is insufficient, as a matter of law, to negate application of the Family Car Doctrine.

In viewing the evidence in a light most favorable to the Heitkamps, we can assume that the jury found that, subsequent to the formation of the partnership by the brothers, Jerome provided the 1973 pickup for the partnership's use as well as for Richard's use, that at the time of the accident the pickup was maintained by the partnership, and that subsequent to Jerome's purchase of the 1978 pickup he seldom used the 1973 pickup. However, we conclude that those facts, assuming them to be found by the jury as true, are insufficient, as a matter of law, to negate the operation of the Family Car Doctrine in this case.

Both parties rely upon the case of *Herman v. Magnuson,* 277 N.W.2d 445 (N.D. 1979), to support their positions with regard to whether or not the Family Car Doctrine applies in this case. In *Magnuson,* this Court, while recognizing that in the past whenever the Family Car Doctrine has been found applicable the head of the household possessed legal title to the vehicle, held that to be liable under the doctrine the head of the household "must furnish, but need not own, the vehicle for the use, pleasure, and business of himself or a member of his family." This Court concluded that the element of furnishing does not hinge on legal

ownership and then listed important considerations for determining whether or not the vehicle was furnished for the use of a family member by the head of the household so as to render the Family Car Doctrine applicable:

"Important considerations are who paid for the car, who had the right to control the use of the car, the intent of the parties who bought and sold the car, the intent of the parents and the child as to who, between them, was the owner of the car, to whom the seller made delivery of the car, who exercised property rights in the car from the date of its purchase to the date of the accident, and any other evidence that bears on the issue of who is the owner in fact." [Footnote omitted.] 277 N.W.2d at 459.

Carol cites the *Magnuson* case in support of her contention that legal title to a motor vehicle by the head of a household is, in itself, sufficient to render the head of the household liable for the negligent operation of the vehicle by a family member. We conclude that it is unnecessary to determine in this case whether or not legal title is sufficient, in itself, to render the head of a household liable under the Family Car Doctrine without considering the factors listed in *Magnuson* because the undisputed facts in this case demonstrate that Jerome not only held legal title to the 1973 pickup but also retained numerous other incidents of ownership including at least some control over Richard's use of the vehicle.

The Heitkamps cite the *Magnuson* case as support for their contention that application of the Family Car Doctrine is a factual question for the jury to determine, and they quote the following footnote from *Magnuson, supra,* as supporting their contention that, if the jury found that Jerome made a gift of the 1973 pickup to the partnership or to Richard, the Family Car Doctrine should not be applied to hold Jerome liable for Richard's negligent operation of the vehicle:

"22. We do not hold that whenever a parent makes a gift of a motor vehicle to a child or a loan to a child for the purchase of a motor vehicle the 'family car' doctrine is applicable. As the situation moves away from existence of a proprietary interest held by the parent after the transfer, or toward the existence of an arm's-length business relationship during the transfer, application of the doctrine becomes less likely." 277 N.W.2d at 459.

We do not interpret the above-quoted footnote from *Magnuson, supra,* as supporting the nonapplication of the doctrine in this case on the ground that Jerome had made a gift of the 1973 pickup to the partnership or to Richard. Even if we assume that Jerome intended to "give" the 1973 pickup to the partnership and to Richard for their use, the undisputed and dispositive facts are that Jerome retained title to and other incidents of ownership in the pickup and that he retained a degree of control over Richard's use of the pickup.

Jerome furnished a vehicle purchased and owned by him for the use of his son, Richard, who at the time of the accident was an unemancipated member of the family. That is precisely the situation for which the Family Car Doctrine was created—to place liability on a financially responsible head of a family for damages incurred by a third party who has been injured by the negligent operation of a vehicle by a member of the family to whom the vehicle was furnished by the head of the household.

We hold that under the circumstances of this case, Jerome is liable, as a matter of law, under the Family Car Doctrine for Richard's negligent operation of the 1973 Chevrolet pickup during the occurrence of the accident which is the subject of this lawsuit. Accordingly, we reverse that part of the district court's order and amended judgment, dated February 22, 1983, that is contrary to our holding, and we remand with instructions for the district court to enter an amended judgment in accordance with this opinion.

SAND, PEDERSON and VANDE WALLE, JJ., and PAULSON *, Surrogate Justice, concur.